IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CARRI LOPEZ-MULVANEY, CONNOR MULVANEY,
ESTATE OF RANDALL MULVANEY, C&L
CONTRACTNG, INC., and AMERICAN
INTERSTATE INSURANCE CO.,

Plaintiffs,

v.

FRASER SHIPYARDS, ANDRIE, LLC, HOLCIM,
INC., ANCHOR CONSULTING, LLC, and
TRAVELERS PROPERTY CASUALTY COMPANY OF
AMERICA,

Defendants.

ORDER

23-cv-789-jdp

This case arises from an accident that occurred in 2022 onboard the barge *Integrity*, which was docked for maintenance and repairs at defendant Fraser Shipyards in Superior, Wisconsin. *Integrity* was owned by defendant Holcim, Inc. and operated by defendant Andrie, LLC. Andrie had contracted with defendant Anchor Consulting to oversee the repairs on *Integrity*. Defendant Travelers Property Casualty Company of America is Fraser's insurer.

Randall Mulvaney, an employee of plaintiff C&L Contracting, Inc., was performing maintenance work on *Integrity* when he slipped through an opening in the barge's guardrail and fell to his death. Mulvaney's estate, along with his wife Carri and son Connor, have sued defendants for negligence in connection with Mulvaney's death. Dkt. 67 (operative complaint). C&L Contracting and its insurer, American Interstate Insurance Company, have joined Mulvaney's family as plaintiffs because they paid workers' compensation benefits to

Mulvaney's family after the accident.[1] Fraser, Andrie, and Holcim have filed counterclaims against C&L Contracting for indemnification, apportionment of responsibility, and breach of the implied warranty of workmanlike performance. Dkt. 21. Andrie and Holcim have filed crossclaims against Anchor Consulting for indemnification. Dkt. 116. Plaintiffs bring claims under the federal Longshore and Harbor Workers' Compensation Act (LHWCA), so this court has jurisdiction over this case under 28 U.S.C. § 1331. The court also has admiralty jurisdiction under 28 U.S.C. § 1333.

All defendants except Fraser move for summary judgment on plaintiffs' claims against them. Dkt. 148 (Andrie and Holcim) and Dkt. 134 (Anchor Consulting). C&L Contracting moves for summary judgment on Andrie, Holcim and Fraser's counterclaims.  Dkt. 120. The motions for summary judgment raise two central issues: first, who was responsible for maintaining safety on *Integrity* at the time of Mulvaney's death? Second, how does the LHWCA limit liability for each of the parties?

The court will grant all three motions for summary judgment. The LHWCA provides plaintiffs' exclusive remedy against Andrie and Holcim. Under that statute, Andrie and Holcim had no duty to warn about dangers that Fraser was already aware of. It is undisputed that Fraser knew about the gap in the guardrail before Mulvaney's accident, so Andrie and Holcim are not liable for the accident under the LHWCA. As for Anchor Consulting, no reasonable jury could find that it was responsible for maintaining safety on *Integrity*. And C&L Contracting

---

[1] C&L Contracting, Inc. and American Interstate Insurance Company were styled as involuntary plaintiffs in the operative complaint. In a previous order, this court explained that the Federal Rules of Civil Procedure do not permit the unilateral joinder of parties as involuntary plaintiffs, and it gave the parties an opportunity show cause why these parties should not be realigned as plaintiffs. Dkt. 115. None of the parties objected, so C&L Contracting and American Interstate Insurance Company are realigned as plaintiffs.

is protected from further liability by the LHWCA, because it already paid workers compensation benefits to Mulvaney's family under the statute. The court will dismiss Andrie, Holcim, and Anchor Consulting, and this case will proceed to trial on plaintiffs' claims against Fraser.

UNDISPUTED FACTS

The court begins with a brief overview of the undisputed facts that are relevant to all three motions for summary judgment. The court will discuss the specific facts relevant to each individual motion for summary judgment in the applicable sections of the analysis.

This case arises from an accident that occurred on board the barge *Integrity*, which is owned by defendant Holcim, Inc. and operated by defendant Andrie, LLC. *Integrity* is the barge component of the *G.L Ostrander-Integrity*, an articulated tug-barge that operates in the Great Lakes region. An articulated tug-barge consists of a barge coupled with a tugboat, which is positioned in a notch at the stern of the barge, and which propels and maneuvers the barge. A gangway between the two vessels allows for movement between them.

In October 2022, Andrie and Holcim contracted with defendant Fraser Shipyards, LLC, to dry dock *Integrity* for regular maintenance and repairs. *See* Dkt. 152-1 (repair contract with Fraser). Andrie and Holcim engaged defendant Anchor Consulting, LLC, to oversee the repair project. Dkt. 116-1 (oversight agreement with Anchor Consulting). Fraser hired plaintiff C&L Contracting to perform sandblasting and painting work as part of the repair project. Dkt. 125-4 (purchase order between Fraser and C&L Contracting).

On November 15, 2022, Andrie delivered the coupled tug-barge to Fraser's shipyard in Superior, Wisconsin. After delivery, the barge was decoupled from the tug. (The parties dispute

3

whether Andrie and Holcim or Fraser performed the decoupling.) The decoupling left a four-foot-wide gap in *Integrity*'s guardrail where the gangplank between the barge and the tug normally sits. A Fraser employee placed red caution tape over the gap. (The parties dispute exactly when that happened and whether the caution tape remained visible throughout the maintenance work.)

C&L Contracting began work on *Integrity* during the week of November 15, shortly after the barge was dry docked. Randall Mulvaney was employed by C&L Contracting as a painter on the project. On the morning of December 5, 2022, Mulvaney was fixing tarps on the deck of *Integrity*, in preparation for painting the hull of the vessel. While attempting to cover the railing with a tarp, Mulvaney fell through the gap in the guardrail, falling approximately 42 feet onto the dock floor. Mulvaney died at the scene.

After Mulvaney's death, C&L Contracting's insurer, plaintiff American Interstate Insurance Company, paid workers' compensation benefits to Mulvaney's family as required by the Longshore and Harbor Workers' Compensation Act (LHWCA). Dkt. 177 and Dkt. 178. Mulvaney's family subsequently filed this lawsuit against Andrie, Holcim, Anchor Consulting, Fraser, and Fraser's insurer Travelers Property Casualty Company of America, seeking damages under the LHWCA, Wisconsin's safe-place statute, maritime tort law, and Wisconsin negligence law. Dkt. 67.

## ANALYSIS

Three motions for summary judgment are before the court. Andrie and Holcim have moved for summary judgment on all of plaintiffs' claims. Dkt. 148. Anchor Consulting has moved on all of plaintiffs' claims and on Andrie and Holcim's claims for indemnification.

4

Dkt. 134. C&L Contracting has moved on Andrie, Holcim, and Fraser's counterclaims for breach of implied warranty of workmanlike performance, apportionment of responsibility, and indemnification. Dkt. 120.

Summary judgment is appropriate if the moving party shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court construes the facts, and draws all reasonable inferences from those facts, in favor of the nonmovant on the motion under consideration. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

## A. Andrie and Holcim's motion

Plaintiffs bring claims against Andrie and Holcim under the LHWCA, 33 U.S.C. § 905(b), which provides a statutory cause-of-action for maritime torts by vessel owners and operators. Plaintiffs also assert common-law negligence claims under federal maritime law and Wisconsin law. Andrie and Holcim contend that summary judgment is warranted on both categories of claims.

### 1. LHWCA claims

The Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, establishes a comprehensive federal workers' compensation program for longshore and harbor workers who are injured in the course of their employment. Before the Act's most recent amendment in 1972, vessel owners were held strictly liable for injuries suffered by contractors working on their vessels, even though the vessel owners did not directly employ or supervise the contractors. The purpose of the LHWCA amendment "was to shift more of the responsibility for compensating injured longshoremen to the party best able to prevent injuries:

the stevedore-employer."[2] *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 96 (1994); *see also Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 168 (1981) (Congress enacted the LHWCA amendments to terminate vessel owners' "automatic, faultless responsibility for conditions caused by the negligence or other defaults of the stevedore.").

The LHWCA authorizes suits against vessel owners and operators for injuries caused by the "negligence of the vessel." *See* 33 U.S.C. § 905(b); *see also* § 902(21) (definition of "vessel" incorporates its owner and operator). The statute is silent about what constitutes negligence by a vessel owner. But in *Scindia*, the Supreme Court identified three primary duties that vessel owners owe to contractors, which if breached, can give rise to liability under § 905(b). First, the "turnover duty" requires the vessel owner to turn the ship over in a reasonably safe condition and to warn the contactor about latent hazards that the contractor would not reasonably anticipate. *Id.* at 167; *Elberg v. Mobil Oil Corp.*, 967 F.2d 1146, 1149–50 (7th Cir. 1992). Second, the "active control duty" requires the vessel owner to exercise due care if the vessel is actively involved in the contractor's work. *Id.* Third, the "duty to intervene" requires the vessel owner to correct certain dangerous conditions of which it has actual knowledge. *Id.* Plaintiffs contend that Andrie and Holcim breached the turnover duty and the active control duty.

---

[2] LHWCA case law generally refers to a vessel owner's duty to "stevedores," which are individuals in the business of loading and unloading cargo from ships. *Stevedore*, New Oxford American Dictionary 1662 (2d ed. 2005). Mulvaney was engaged in maintenance work on *Integrity*, not stevedoring work. But the parties agree that the law applicable to stevedores also applies to other independent contractors who work on vessels, including maintenance and repair workers.

### a. Turnover duty

A vessel owner's turnover duty consists of two interrelated responsibilities. *Howlett*, 512 U.S. at 98–99. First, the vessel owner must turn the vessel over in a reasonably safe condition, such that an experienced contractor, "mindful of the dangers he should reasonably expect to encounter," will be able to carry out its operations with reasonable safety. *Id.* at 98; *see also Holder v. Fraser Shipyards, Inc.*, 288 F. Supp. 3d 911, 938 (W.D. Wis. 2018). Second, the vessel owner must warn the contractor of any latent or hidden dangers that are known or should be known to the vessel owner. *Howlett*, 512 U.S. at 98–99; *Holder*, 288 F. Supp. 3d at 938.

Plaintiffs contend that Andrie and Holcim breached its turnover duty in both respects. They argue that *Integrity* was not in a reasonably safe condition for maintenance workers because of the gap in the guardrail. And they argue that Andrie and Holcim didn't warn Fraser Shipyards or C&L Contracting about the gap during the turnover process. The court begins with plaintiffs' arguments about duty-to-warn.

Plaintiffs contend that Andrie and Holcim violated the duty to warn because they didn't tell Fraser or C&L Contracting about the gap in the guardrail, which was created when Andrie and Holcim decoupled *Integrity* from the attached tugboat. In fact, plaintiffs say that Andrie and Holcim affirmatively misled Fraser about the guardrail, because they gave Fraser an inaccurate diagram of *Integrity* that did not show the gap.[3] Andrie and Holcim respond that they weren't required to warn Fraser about the gap because it was an open and obvious danger.

Andrie and Holcim rely on *Howlett*, which holds that a vessel owner's duty to warn attaches only to "hazards that are not known to the stevedore and that would be neither

---

[3]Some of these facts are disputed, but for the purpose of summary judgment, the court presents the facts in the light most favorable to plaintiffs as the non-moving parties.

obvious to nor anticipated by a skilled stevedore in the competent performance of its work." 512 U.S. at 105. That's because vessel owners are entitled to rely on experienced contractors to act competently, which includes taking reasonable steps to protect against known or obvious dangers. *See id.* at 104.

The parties spend much of their briefs arguing about whether the gap in *Integrity*'s guardrail was open and obvious. But that's ultimately irrelevant, because it is undisputed that Fraser had actual knowledge of the gap before Mulvaney's accident. A photo of *Integrity* taken three days before the accident shows red caution tape over the gap in the guardrail, Dkt. 155-1, which the parties agree was placed there by Fraser employee Cory Lonetto.[4] *See* Dkt. 184, ¶¶ 26, 37. The parties disagree about when Lonetto placed the tape and whether the tape was still visible on the day of Mulvaney's accident, but that dispute is immaterial: what matters is that Fraser knew that the gap in the guardrail existed before Mulvaney's accident. In *Howlett*, the Supreme Court explained that the duty to warn attaches only to hazards that are not open and obvious *and* are not known to the contractor. 512 U.S. at 105 (emphasis added). That makes sense: there would no point in requiring a vessel owner to warn a contractor about dangers that he is already aware of, and any such rule would contravene the principle underlying *Scindia* and *Howlett*, which is that vessel owners are entitled to rely on experienced contractors to competently perform their work. Fraser's undisputed actual knowledge of the gap precludes any finding that Andrie and Holcim breached the duty to warn.

---

[4] The parties don't say what Lonetto's job title was at Fraser. Lonetto was not deposed in this case: in a previous motion, plaintiffs explained that he is no longer employed at Fraser and that they received no response to multiple attempts to contact him for a deposition. *See* Dkt. 105.

That leaves the second component of the turnover duty, that vessel owners must turn the vessel over in a condition that permits a competent contractor to work in reasonable safety. *Scindia*, 451 U.S. at 166–67. Plaintiffs contend that Andrie and Holcim breached the safe-condition requirement by failing to barricade the gap in the guardrail after decoupling *Integrity* from the tug and removing the gangplank that normally sits in that location. Andrie and Holcim contend that the actual knowledge defense also bars liability here.

As plaintiffs point out, *Howlett* involved only the duty to warn, so it doesn't speak directly to whether the safe condition requirement also applies to known or obvious hazards, nor has the Seventh Circuit considered that issue. But other circuits have applied the *Howlett* rule to the safe-condition requirement, declining to find a breach if a hazard is open and obvious or if a contractor has actual knowledge of the hazard. For example, in *Kirksey v. Tonghai Maritime*, 535 F.3d 388 (5th Cir. 2008), the plaintiff was injured by steel coils in the cargo hold that had become unstable due to poor stowing. *Id.* at 390–91. The plaintiff brought suit against the vessel owner, contending that the condition of the stowage was not reasonably safe at turnover. But it was undisputed that the plaintiff's employer was aware of the hazardous condition of the cargo stow, *id.* at 392, and the Fifth Circuit found that fact dispositive, reasoning:

> Given the *Howlett* Court's clear language strictly limiting the vessel's turnover duty to warn to *latent* defects and dangers, it makes no sense to say that the vessel is nevertheless liable to the longshoremen for breach of the duty to turnover a safe ship based on an *obvious* defect against which it had no duty to warn.

R. 395 (emphasis in original).

The Eleventh Circuit reached the same conclusion in *Troutman v. Seaboard Atl. Ltd.*, 958 F.3d 1143 (11th Cir. 2020). In that case, a longshoreman fell from an elevated walkway on

9

the upper deck of the ship's cargo hold. The walkway posed no risk of falling when the lower cargo bay was full, because the cargo was stacked even with the level of the walkway. But when the lower cargo bay was empty, there was six- to eight-foot drop from the walkway to the deck. *Id.* at 1144–45. The court affirmed summary judgment for the shipowner, concluding that the exposed walkway was an open and obvious danger, which a reasonably competent stevedore could have avoided by emptying the upper cargo bay first. Applying *Howlett* and *Scindia*, the court reasoned that the open-and-obvious defense applies to a breach of the turnover duty of safe condition, because a "longshoreman can only be said to have carried out his work with reasonable competence if he identified and coped with defects of which he was aware." *Id.* at 1147 (internal quotations and alterations omitted).

In some cases, courts have imposed liability on vessel owners for known or obvious hazards, if the hazards cannot be easily remedied or avoided by the contractor. *Compare Moore v. M/V ANGELA*, 353 F.3d 376 (5th Cir. 2003) (malfunctioning crane on a ship could not be easily remedied); *Martinez v. Korea Shipping Corp.*, 903 F.2d 606 (9th Cir. 1990) (unguarded ladder opening was "design defect" in the ship itself) *with Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 34 (5th Cir. 1997) (experienced sandblaster could easily have moved exposed mooring line on the ship deck out of the way); *Troutman*, 958 F.3d at 1147–48 (11th Cir. 2020) (experienced stevedore could have avoided walking on an exposed elevated walkway). That tracks with the general rule in *Scindia* that a vessel owner's duty extends to "exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property." 451 U.S. at 167. If a hazardous condition is easily remedied or avoided, it follows that an experienced contractor

10

will take the necessary precautions to be able to work safely. But if a hazardous condition is not easily remedied or avoided, then the condition of the ship might be unreasonably dangerous even for an experienced contractor. *See Scheuring v. Traylor Bros.*, 476 F.3d 781, 790 (9th Cir. 2007) (key question is whether an experienced contractor could have avoided the hazardous situation).

Here, the court has already determined that Fraser had actual knowledge of the gap in the guardrail, so the key question is whether Fraser could have easily remedied the gap prior to beginning maintenance work on *Integrity*. Neither party addresses this issue in their briefs—plaintiffs say that the actual knowledge defense never applies to the duty to maintain a reasonably safe condition, and Andrie and Holcim say that it always applies without addressing the exception for hazards that cannot be remedied or avoided. But plaintiffs have the burden of demonstrating negligence of the vessel, and they have provided no evidence suggesting that Fraser could not have easily barricaded a four-foot-wide gap in a guardrail for the duration of the maintenance work. Accordingly, any failure to take reasonable precautions rests with Fraser or its subcontractor C&L Contracting, not with Andrie and Holcim as the owner and operator of the vessel. *Cf. Howlett*, 512 U.S. at 96 (the LHWCA shifts responsibility "to the party best able to prevent injuries: the stevedore-employer."). The court concludes that Andrie and Holcim did not breach their turnover duty under the LHWCA.

### b.  Active control duty

A vessel owner may also be liable under § 905(b) of the LHWCA if "it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or

11

from equipment, under the active control of the vessel during the stevedoring operation." *Scindia*, 451 U.S. at 167. This is commonly called the "active control duty."

Plaintiffs contend that Andrie and Holcim breached the active control duty because they retained "meaningful control" over safety conditions during the maintenance project. Plaintiffs point to Andrie and Holcim's contract with Fraser, which provided that Fraser would "participate with [Andrie and Holcim] in joint safety audits upon request" and that Andrie and Holcim had stop work authority if Fraser "fails, in the judgment of [Andrie and Holcim], to provide adequate safety precautions as described herein." Dkt. 152-1, at 3. Plaintiffs also point out that Andrie and Holcim participated in a pre-work safety planning meeting, which included an agenda item about addressing open cutouts and closures on the vessel, and that Andrie and Holcim were responsible for decoupling *Integrity* from the tug at the beginning of the maintenance project.

None of these facts is sufficient to create a triable issue on active control. As defendants point out, active control requires a showing that the vessel owner was in charge of the area in which the hazard existed or was directing the specific activities that the contractor was doing. *Davis v. Partenreederei M.S. Normannia*, 657 F.2d 1048 (9th Cir. 1981) (ship's officers retained responsibility for the positioning of the gangway during stevedoring operations); *Davis v. Portline Transportes Mar. Internacional*, 16 F.3d 532, 540 (3d Cir. 1994) (ship's crew took charge of the area because they hosed off the ship deck to get rid of cement dust). The "mere reservation of the right to intervene to protect the ship's and its crew's interests, or to eject the stevedore at any time, does not amount to the substantial control necessary to trigger the vessel's active operations duty as long as the vessel does not exercise those reserved rights." *Id.* at 541.

12

Here, it is undisputed that Andrie and Holcim did not exercise their stop work authority or request any safety audits. On the contrary, they relied upon Fraser to maintain safety, which was Fraser's responsibility under the contract. Dkt. 152-1, at 3 ("[Fraser] is solely responsibility for the safety of its workers, subcontractors, Owner's Representative, and outside contractors."). Nor were Andrie and Holcim in charge of any part of *Integrity*'s deck during maintenance operations. Plaintiffs argue that Andrie and Holcim were responsible for decoupling the barge from the tug, so they were in active control of the gap in the guardrail at that point. But the decoupling happened at the very beginning of the maintenance work, and it is undisputed that Fraser subsequently took control over that area by placing red caution tape over the gap. There is simply no evidence from which a reasonable jury could find that Andrie and Holcim retained active control over the vessel at the time of Mulvaney's accident.

### 2. Other negligence claims

In addition to their LHWCA claims, plaintiffs have asserted negligence claims against Andrie and Holcim under general maritime tort law and Wisconsin tort law. Plaintiffs also purport to assert claims under the Wisconsin safe-place statute, Wis. Stat. § 101.11, but the safe-place statute does not create an independent cause of action; it simply establishes the relevant standard of care for owners of places of employment with regard to building maintenance and employee safety. *Krause v. Veterans of Foreign Wars, Post*, 9 Wis. 2d 547, 552, 101 N.W.2d 645 (1960) (quoting *Ermis v. Fed'l Windows Mfg. Co.*, 7 Wis. 2d 549, 555, 97 N.W.2d 485 (1959)).

Andrie and Holcim contend that plaintiffs' non-LHWCA claims are barred by § 905(b) of the LHWCA, which states that "the remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." Plaintiffs

don't dispute that the state-law and maritime tort claims are preempted if plaintiffs can recover against Andrie and Holcim under the LHWCA. But they argue that these claims are not preempted if the court concludes that summary judgment is warranted on the LHWCA claims.

The court disagrees. The LHWCA covers negligence claims by "non-seaman maritime workers" against "vessel[s]," and it "expressly preempts all other claims" that covered individuals could bring against a vessel. *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818–19 (2001). If plaintiffs' claims fall within the type of maritime negligence claims covered by the LHWCA, then other claims are preempted, even if plaintiffs cannot actually succeed on their LHWCA claims on the merits. *Blanchard v. Weeks Marine, Inc.*, No. CIV.A. 13-5089, 2014 WL 1414640, at *2 (E.D. La. Apr. 11, 2014); *White v. Fincantieri Bay Shipbuilding*, 569 F. Supp. 3d 794, 802 (E.D. Wis. 2021). Neither side disputes that Mulvaney was a non-seaman maritime worker who was injured within navigable waters, and thus, that the LHWCA covers his negligence claims against Andrie and Holcim. The court has concluded that plaintiffs' LHWCA claims fail on the merits, but that doesn't affect the preemption analysis. The LHWCA provides plaintiffs' exclusive remedy against Andrie and Holcim, so the court will grant summary judgment to Andrie and Holcim on the maritime and state-law tort claims.

Plaintiffs resist this conclusion in two ways. First, they cite *Armstrong v. National Shipping Company of Saudi Arabia* for the proposition that state-law claims are preempted only if plaintiffs can succeed on their LHWCA claims on the merits. No. 4:15-CV-868, 2016 WL 6650983 (S.D. Tex. Nov. 10, 2016). Plaintiffs are correct that that is *Armstrong*'s holding. The plaintiff in *Armstrong* was injured by a forklift with a defective parking brake. He sued the vessel owner under the LHWCA, but the court granted summary judgment to the vessel owner,

14

concluding that plaintiff had no evidence that the vessel owner knew about the defective parking brake, so he could not show that the vessel owner had breached a duty of care under the LHWCA. *Id.* at *6. But the court declined to dismiss the plaintiff's state-law negligence claims against the owner, concluding that the plaintiff could not "state a cognizable claim for negligence" under the LHWCA, and thus, that his claims were not preempted. *Id.* at *8.

The court does not find *Armstrong* persuasive. *Armstrong*'s conclusion relied on a misreading of *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285 (5th Cir. 2008), in which the Fifth Circuit held that the LHWCA preempts a plaintiff's state-law claims only if the plaintiff states a "cognizable claim for negligence." *Armstrong*, 2016 WL 6650983. But in *McLaurin*, the court decided that the plaintiff did not state an LHWCA claim because his injuries occurred on dry land, not in the navigable waters of the United States. 529 F.3d at 291. In other words, the LHWCA didn't even cover McLaurin's claims, so he was free to proceed with claims under traditional tort law. In *Armstrong*, by contrast, the plaintiff's claims were covered by the LHWCA, because plaintiff was a non-seaman maritime worker who was injured within navigable waters. *See Ne. Marine Terminal Co. v. Caputo*, 432 U.S. 249, 279–80 (1977). Armstrong's LHWCA claims were dismissed because he failed to establish liability on the merits, not because the LHWCA didn't cover his claims. The court should have concluded that Armstrong's state-law claims were preempted.

Second, plaintiffs attempt to incorporate the heightened duty imposed on Wisconsin employers by the safe-place statute into the duties required of vessel owners under the LHWCA. Plaintiffs rely on *Scindia*, in which the Supreme Court held that "absent contract provision, positive law, or custom to the contrary . . . the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions

15

that develop within the confines of the cargo operations that are assigned to the stevedore." 451 U.S. at 172. Plaintiffs argue that Andrie and Holcim were obligated by "positive law"—here, the safe-place statute—to affirmatively inspect their vessel for hazards, so their violation of the safe-place statue should be considered a violation of the LHWCA. Andrie and Holcim respond that plaintiffs' reading of the "positive law" language in *Scindia* is too broad, because it would effectively replace the LHWCA regime with a state-law negligence framework.

The court agrees with Andrie and Holcim. When the Supreme Court in *Scindia* referred to "contract provision[s], positive law, or custom[s]," it meant that rules or regulations could change a contractor's expectations about who is responsible for remedying specific hazardous conditions. *See Scindia*, 451 U.S. at 176–178 (noting that federal longshore regulations require cargo handlers to immediately report defective winches to the ship's captain); *Elberg*, 967 F.2d at 1151 (noting that OSHA regulations impose a duty on the contractors to barricade open hatches and other deck openings). Plaintiffs cite no authority in which a court has relied on the "positive law" language to impose a general safe-place duty on a vessel owner. Nor would that be consistent with the purpose of the LHWCA, which was to make vessels liable only for their own negligence, and to place the primary responsibility for maintaining safe conditions on maritime contractors, not on vessel owners. *Scindia*, 451 U.S. at 168.

In sum, plaintiffs have not adduced evidence sufficient for a reasonable jury to find that Andrie and Holcim were negligent under LHWCA, which is plaintiffs' exclusive remedy against them. Andrie and Holcim's motion for summary judgment will be granted, and the court will dismiss them from the case.

### B. Anchor Consulting's motion

Andrie hired defendant Anchor Consulting, LLC, to serve as its onsite representative during the maintenance work on *Integrity*. Anchor Consulting's owner and principal employee was Michael Nagem, a maritime engineer with expertise in constructing and repairing vessels. Dkt. 170-1 (Nagem resume). Andrie hired Nagem to ensure that *Integrity* was repaired correctly and to provide quality control guidance to Andrie about the repairs. Dkt. 116-1, at 4 (consulting agreement between Andrie and Anchor Consulting).

Anchor Consulting moves for summary judgment on plaintiffs' negligence claims against it under the LHWCA, maritime tort law, Wisconsin common law, and the safe place statute, and on Andrie and Holcim's crossclaim for indemnification. The crossclaim for indemnification is moot in light of the court's ruling that Andrie and Holcim are entitled to summary judgment, so the court will grant Anchor Consulting's motion on that claim without further discussion.

As for the negligence claims, Anchor Consulting contends that it was not responsible for worker safety on *Integrity*, so no reasonable jury could find that it acted negligently. The parties agree that Anchor Consulting's contract contained no explicit reference to worker safety; that responsibility was reserved exclusively to Fraser under its contract with Andrie and Holcim. *See* Dkt. 152-1, at 3 (Fraser is "solely responsible for the safety its workers, subtractors, Owner's Representative, and outside contractors."). But plaintiffs say that Anchor Consulting nevertheless had a role in ensuring worker safety. Plaintiffs point out that Nagem had general supervisory authority over the *Integrity* project, that he attended safety planning meetings, and that he acted as Andrie's onsite representative and could have exercised Andrie's contractual authority to stop work if he believed it necessary.

None of this evidence is sufficient to create a triable issue about whether Anchor Consulting acted negligently. Anchor Consulting points to a line of Wisconsin cases holding that architects and engineers who supervise construction projects do not have a common law duty to ensure worker safety on the construction site, because that role is reserved to the construction contractor. *Luterbach v. Mochon, Schutte, Hackworthy, Juerisson, Inc.*, 84 Wis. 2d 1, 267 N.W.2d 13 (1978); *Kaltenbrun v. City of Port Washington*, 156 Wis. 2d 634, 457 N.W.2d 527 (Ct. App. 1990).[5] Plaintiffs make no attempt to distinguish these cases, and the court agrees that they are instructive. Anchor Consulting's role on the project was to provide general supervision and engineering guidance on the *Integrity* project; it had no specific responsibility to supervise workers or maintain safety on the worksite. Plaintiffs haven't identified any common-law or contractual duty that Anchor Consulting failed to meet that might have contributed to Mulvaney's death. No reasonable jury could find that Anchor Consulting was negligent here.

In their response brief, plaintiffs argue that Anchor Consulting had "direct involvement with the management of fall-protect measures at the location where Mr. Mulvaney fell." Dkt. 162, at 5. Plaintiffs point to a December 30 email from an Andrie representative to Michael Nagem, in which the Andrie representative told Nagem: "Don't let yard forget to remove welded barricade across gangway opening prior to tug notching up." Dkt. 166-3. Nagem forwarded the email to a Fraser Shipyards employee, writing: "Fyi . . . he's talking about where

---

[5] Both parties rely exclusively on Wisconsin law in their briefs, even though plaintiffs also assert negligence claims against Anchor Consulting under the LHWCA and federal maritime law. But nothing in the court's own research suggests that the negligence analysis would be different under the LHWCA or federal maritime law. *See, e.g., Hines v. Brit. Steel Corp.*, 907 F.2d 726, 730–31 (7th Cir. 1990) (rejecting an argument under the LHWCA that a ship owner with general supervisory authority over cargo operations had a duty to keep cargo handlers safe).

the painter fell from." Dkt. 166-3. But no reasonable jury could infer from the email that Anchor Consulting was responsible for fall safety. All the email shows is that Fraser put up a temporary barricade to ensure safety after Mulvaney's accident, and that Nagem wanted to ensure the barricade was removed before the maintenance work ended.

## C.  C&L Contracting's motion

Andrie, Holcim, and Fraser have filed counterclaims against C&L Contracting for breach of the implied warranty of workmanlike performance, apportionment of responsibility, common-law indemnification, and contractual indemnification. Dkt. 21.

C&L Contracting contends that most of the counterclaims are barred by the LHWCA's exclusive remedy provisions, which limit non-LHWCA liability for employers of injured maritime workers. Section 904 of the Act provides that employers "shall be liable for and shall secure the payment to his employees" of workers' compensation, "irrespective" of who is at fault for the injury. But once workers' compensation is paid, employer liability under § 904 "shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death." 33 U.S.C. § 905(a). And under section 905(b) of the LHWCA, the employer is not liable to the vessel owner and operator for injuries to maritime workers. That section states:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and *the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.*

19

33 U.S.C. § 905(b) (emphasis added).

Andrie and Holcim concede that if C&L Contracting paid workers' compensation to Mulvaney's family under the LHWCA, then their claims against C&L Contracting are barred by § 905(b). And Fraser concedes that if C&L Contracting paid workers' compensation benefits, then its claim for apportionment of responsibility is barred by § 905(a). In their response brief, defendants argued that C&L Contracting had not adduced admissible evidence that it paid workers' compensation to Mulvaney's family, because C&L Contracting relied solely on a declaration from its president Charles McDermid, stating: "It is my understanding that C&L, through its insurers, has paid Mr. Mulvaney's family worker's compensation benefits following his passing." Dkt. 125, ¶ 27. But C&L Contracting submitted additional evidence with its reply brief, Dkt. 177 and Dkt. 178, and, after the court requested a surreply from defendants to respond that evidence, defendants admitted that the evidence "appear[s] to indicate that death benefits have been paid to Mulvaney's family." Dkt. 187.[6] The facts of the workers' compensation payment are now undisputed, so the court will grant C&L Contracting's motion for summary judgment on Andrie and Holcim's claims, and on Fraser's claim for apportionment of responsibility.

Fraser contends that its common-law indemnification claim survives despite the exclusivity provision of the LHWCA. Fraser cites *In re RQM, LLC* for the proposition that "indemnity remains appropriate [under maritime law] where one party's negligence is 'active'

---

[6] In the surreply, defendants objected on timeliness grounds to C&L Contracting's new evidence that it paid workers' compensation benefits to Mulvaney's family. But the court gave defendants an opportunity to respond to the new evidence, and defendants don't identify any unfair prejudice that they suffered from the untimely submission. Defendants' objection is overruled.

and the other's is merely 'passive.'" No. 10 C 5520, 2011 WL 3205361 (N.D. Ill. July 28, 2011) (citing *Hillier v. Southern Towing Co.*, 714 F.2d 714 (7th Cir. 1983)). But *RQM* and *Hillier* did not involve the LHWCA, so those cases are not instructive on the scope of preemption under § 905(a). C&L Contracting argues that § 905(a) bars the common-law indemnification claims because indemnification is predicated on concurrent fault, and under § 905(a), an employer who has paid workers' compensation benefits cannot be found to be a joint tortfeasor. Dkt. 121, at 4–5 (citing *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 115 (1974)). Fraser did not address that argument in its response brief, so it has forfeited the issue. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). The court will grant summary judgment to C&L Contracting on Fraser's common law indemnification claim.

That leaves Fraser's counterclaims for contractual indemnification and for breach of the implied warranty of workmanlike performance. C&L Contracting does not contend that these claims are barred by § 905(a). *Cf. Pippen v. Shell Oil Co.*, 661 F.2d 378, 386 (5th Cir. 1981) (contractual indemnification and breach of warranty claims are not claims for damages "on account of" the employee's injury, so they are not barred by § 905(a)). But C&L Contracting says that summary judgment is warranted because C&L Contracting never agreed to indemnify Fraser. C&L Contracting says that it had no express written contract with Fraser, and that given the responsibilities that C&L Contracting and Fraser had in the maintenance project, no reasonable jury could find an implied indemnification agreement either. Dkt. 121, at 7–10. Fraser did not respond to these arguments, so it has forfeited these issues too. C&L Contracting is entitled to summary judgment on all the counterclaims against it.

CONCLUSION

This order resolves all claims against defendants Andrie, Holcim, and Anchor Consulting, and all counterclaims against plaintiff C&L Contracting. Accordingly, Andrie, Holcim, and Anchor Consulting will be dismissed. This case will proceed to trial on plaintiffs' claims against Fraser and Fraser's insurer Travelers Property Casualty Company of America.

ORDER

IT IS ORDERED that:

1. Plaintiff C&L Contracting's motion for summary judgment, Dkt. 120, is GRANTED.

2. Defendants Andrie, LLC, and Holcim, Inc.'s motion for summary judgment, Dkt. 148, is GRANTED.

3. Defendant Anchor Consulting, LLC's motion for summary judgment, Dkt. 134, is GRANTED.

4. Involuntary plaintiffs C&L Contracting and American Interstate Insurance Company are REALIGNED as plaintiffs.

5. Andrie, Holcim, and Anchor Consulting are DISMISSED from the case.

Entered April 20, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

22